**UNITED STATES of America, Appellee,**

v.

**Norris Lee SMITH, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Harry SUTTON, Appellant.**

**Nos. 85–1175, 85–1884 and 84–2634.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1986.

Decided July 3, 1986.

Rehearing in Nos. 85–1175 and 85–1884
Denied July 31, 1986.

Rehearing and Rehearing En Banc
Denied Sept. 2, 1986 in
No. 84–2634.

Lee L. Lawless, Asst. Federal Public Defender, St. Louis, Mo., for appellant.

J. Bennett Clark, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, Floyd R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

Harry Sutton and Norris Lee Smith appeal from a jury verdict finding them guilty of conspiring to receive, conceal, store, barter, sell, or dispose of stolen securities in violation of 18 U.S.C. §§ 371 and 2315, and of knowingly receiving, concealing, storing, or disposing of stolen securities in violation of 18 U.S.C. § 2315. Smith also appeals from a district court order denying his motion for a new trial. We affirm.

## I. Background

Reviewing the evidence in the light most favorable to the verdict, *United States v. Eng*, 753 F.2d 683, 687 (8th Cir.1985), the jury could reasonably have found the following facts. Sutton and Smith obtained possession of fifty stock certificates, representing 50,000 shares of Anheuser-Busch stock, which they knew had been stolen from a Federal Express delivery van in St. Louis, Missouri. These certificates were stolen while en route from Dillon, Reed & Company, Inc. in New York, New York, to Centerre Trust in St. Louis.

The day after the certificates were stolen, Sutton approached William Lee seeking Lee's help to "fence" the certificates. Lee took the certificates from Sutton. The following day, however, Lee informed Sutton and Smith that the certificates were worthless and returned the certificates to them.

Smith then contacted Centerre Trust and offered to return the certificates for a "reward." Through a series of telephone calls, Smith arranged to meet Federal Bureau of Investigation (FBI) Special Agent Ronnie Ware, who was posing as a Centerre Trust employee, and return the certificates for $1500. When Smith attempted to exchange the certificates, he was arrested

and twenty-five of the stolen certificates were recovered.

The following week FBI agents interviewed William Lee, whose fingerprints had been removed from twenty-two of the recovered stock certificates. Lee agreed to cooperate with the FBI in recovering the remaining twenty-five certificates. Lee met Sutton in an alley where Sutton exchanged twenty-four of the remaining certificates for fifty dollars. Sutton was subsequently arrested at his home and later gave a statement to the FBI.

Sutton and Smith were tried jointly before a jury and convicted of conspiring to receive, conceal, store, barter, sell, or dispose of the stolen certificates, and of knowingly receiving, concealing, storing, or disposing of the certificates. Smith filed a motion for a new trial based on newly discovered evidence, which the district court denied. Smith and Sutton raise several issues on appeal.

## II. Discussion

Sutton contends that the trial court improperly precluded his attorney from introducing portions of Sutton's post-arrest statement. Sutton sought to introduce this evidence after FBI special agent Ware had testified with respect to a part of that statement. We conclude no error was committed.

■ Generally, when part of a defendant's post-arrest statement is introduced into evidence, the defendant has the right to have the entire statement introduced. *United States v. Kaminski,* 692 F.2d 505, 522 (8th Cir.1982) (quoting *United States v. Wenzel,* 311 F.2d 164, 168 (4th Cir.1962)). This rule is sometimes referred to as the rule of completeness. *Id.*

■ The rule of completeness, however, is not without exception. For example, if the prosecution seeks to admit the statement of a nontestifying defendant (Sutton) and if portions of the statement inculpate a co-defendant (Smith), the inculpatory portions must be omitted to protect the co-defendant's sixth amendment right of confrontation. *United States v. Hernandez,* 608 F.2d 741, 748–49 (9th Cir.1979) (citing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)); *see also Kaminski,* 692 F.2d at 522. In such an instance, the rule of completeness will be violated only when the statement in its edited form, while protecting the sixth amendment rights of the co-defendant, effectively "distorts the meaning of the statement or excludes information substantially exculpatory" of the nontestifying defendant. *Id.*

■ A further limitation on the rule of completeness, applicable in all cases, arises when the prosecution seeks only to introduce a portion of the defendant's statement. There, the defendant still has the right to introduce additional portions of his statement. But, this right does not entitle the defendant to introduce portions of his statement that are neither explanatory of nor relevant to those portions of the statement introduced by the prosecution. *United States v. Marin,* 669 F.2d 73, 84–85 (2d Cir.1982) (citing *United States v. McCorkle,* 511 F.2d 482, 486–87 (7th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975)).

Here, the prosecution, through the testimony of a Federal Bureau of Investigation agent, was allowed to introduce a small portion of Sutton's post-arrest statement. Specifically, the agent was allowed to testify that

[Sutton] stated that he was present on Hamilton Street at the time of Norris Smith's arrest and observed the arrest. He also indicated to us that he owned a red or maroon bicycle.

As Sutton himself now concedes, while not a confession or admission of guilt, this statement served as a partial admission supporting the earlier testimony of two government witnesses who each placed Sutton in the vicinity of Hamilton Street at the time of Smith's arrest.

Sutton contends, however, that once this statement was admitted, the district court committed prejudicial error in violation of the rule of completeness when, although

allowing Sutton to cross-examine the government agent with respect to the portion of the statement testified to, it refused to allow Sutton to cross-examine the agent with respect to other portions of the statement. Specifically, Sutton argues that he should have been allowed to cross-examine the agent with respect to those portions of his post-arrest statement indicating that (1) Sutton had met Smith two months earlier; (2) five weeks before Sutton's arrest Smith had asked Sutton if he could dispose of Anheuser-Busch stock certificates; (3) Sutton never dealt in stocks; (4) stocks were a "white boy's game"; and (5) he was not involved in attempting to sell the stocks and had no idea what to do with stock certificates.

■ We conclude no error was committed by the district court when it narrowly limited cross-examination to the specific statement testified to by the government agent. Contrary to Sutton's assertion, none of the statements pointed to by Sutton in any way explain or are relevant to Sutton's presence on Hamilton Street at the time of Smith's arrest. *See Marin,* 669 F.2d at 84–85. Further, several of these statements were incriminatory to Smith and thus were properly excluded in order to protect Smith's sixth amendment right of confrontation. *See Hernandez,* 608 F.2d at 748–49.

■ Even assuming, as suggested by the dissent, that the district court erred in failing to exclude the entire statement, no prejudice has been shown by Sutton. Prior to the agent's testimony, two witnesses had without objection already specifically placed Sutton at the scene of Smith's arrest. Thus, the statement challenged by Sutton was entirely cumulative of evidence that had already been placed before the jury without challenge. In the context of this case, the district court's failure to exclude purely cumulative testimony, even if error, cannot have been prejudicial to Sutton's interest.

We note further our disagreement with the dissent's suggestion that the district court committed reversible error when,

rather than exclude the challenged statement, it failed to sever Sutton's trial from that of Smith's. Significantly, however, Sutton did not seek severance in a pretrial motion; he did not seek severance during trial; and he did not raise severance as an issue in a post-trial motion. Thus, even if for some reason the district court did commit error when it failed to sever Sutton's trial, that error has not been preserved for appeal by Sutton.

Additionally, Sutton has in no way sought to raise the issue of severance on appeal. As a result, no basis exists for this court to apply the plain error doctrine. Rather, for purposes of Sutton's appeal, the question of severance simply does not exist.

Both Sutton and Smith contend that the trial court should have granted their motions for judgment of acquittal on the ground that the prosecution failed to establish that the certificates were still moving in, or were a part of, interstate commerce as required under 18 U.S.C. § 2315. They contend the prosecution failed to establish this element of the crime, arguing that when they received or attempted to sell the stock certificates, the certificates were neither moving in, nor were a part of, interstate commerce. They insist that when the certificates reached Missouri, the certificates were no longer in interstate commerce, and the prosecution introduced no evidence to indicate that Sutton or Smith attempted to move the certificates to another state.

■ Whether the certificates were moving in, or were a part of, interstate commerce is a question of fact for the jury. *United States v. Luman,* 624 F.2d 152, 155 (10th Cir.1980); *Lee v. United States,* 363 F.2d 469, 475 (8th Cir.), *cert. denied,* 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227 (1966).

A jury may conclude that an item once moving in interstate commerce has "come to rest" and lost its interstate character so that subsequent attempts to receive, conceal, sell or dispose of it will

not violate 18 U.S.C. § 2315. The jury need not do so, however, simply because an item has reached the state where it is sold or intended to be sold (designation state). So long as its movement within the designation state can be considered a continuation of the movement that began out of state the prerequisite of 18 U.S.C. § 2315 is satisfied. * * * It is immaterial that the defendant's concealment of the property was restricted to the portion of the interstate journey occurring wholly within the designation state.

*United States v. Tobin,* 576 F.2d 687, 692–93 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978) (citations and footnote omitted); *see also United States v. Garber,* 626 F.2d 1144, 1147–48 (3d Cir.1980) ("[I]nterstate shipment does not lose its characteristic as such 'until it arrives at its final destination and is there delivered.'") (quoting *United States v. Yoppolo,* 435 F.2d 625, 626 (6th Cir.1970)), *cert. denied,* 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981).

■ The evidence shows that the certificates became part of interstate commerce when they were sent from Dillon, Reed & Company, Inc. in New York, New York, to Centerre Trust in St. Louis, Missouri. The evidence also shows that before the certificates could be delivered to their final destination, they were stolen from a Federal Express delivery van. This is sufficient evidence to allow the jury to conclude that the certificates were still in interstate commerce when the defendants received and attempted to sell them. Accordingly, the district court properly denied the motions for acquittal.

■ Smith argues that regardless of the interstate nature of the stock the stolen stock certificates did not have a market value of $5,000 or more as required in 18 U.S.C. § 2315. This argument is without merit. Section 2311 provides that the term "value," as used in section 2315, "means the face, par, or market value, whichever is the *greatest.*" 18 U.S.C. § 2311 (emphasis added). Here, regardless of the face value or market value of the certificates, the record shows that the stolen certificates had a par value of $50,000, well in excess of section 2315's minimum requirement of $5,000.

Smith also raises the following issues: (1) the district court should have (a) suppressed identification evidence, (b) dismissed Smith's indictment because he was not advised of his *Miranda* rights, and (c) instructed the jury to disregard statements made by the prosecution during closing arguments; (2) the district court abused its discretion in denying Smith's motions for severance and new trial based on newly discovered evidence; (3) the government improperly granted William Lee immunity; and (4) Smith's first appointed counsel was ineffective. Both defendants contend the evidence was insufficient to support their convictions. We have reviewed these issues and find them to be without merit.

The judgment is affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. Sutton's defense was substantially prejudiced by the introduction of the edited statement in the joint trial.

As the majority recognizes, when the government introduces a portion of a confession, the general rule is that the defendant has the right to have the entire statement introduced. This rule of completeness is violated, and severance required, "where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the declarant." *United States v. Kaminski,* 692 F.2d 505, 522 (8th Cir.1982). The government's careful deletion of the sections exculpatory of Sutton, leaving only that small portion which could be used to bolster the government's theory, clearly distorted the meaning of Sutton's statement.

The district court allowed the government's witness, special agent Ronnie Ware, to testify that Sutton had observed Smith's arrest. This buttressed the testimony of

Lee,[1] the government's chief witness against Sutton, that Sutton had been patrolling the area. The district court, however, would not allow Sutton to cross-examine Ware regarding the rest of Sutton's statement, which exculpated Sutton but implicated Smith.[2] In these portions, Sutton not only denied participation in the theft and sale of the certificates, but explained the appearance of his fingerprint on one of the certificates, the only "hard" evidence of his involvement. Sutton, in effect, would have been forced to take the stand in order to introduce the omitted exculpatory portions, in violation of his right against self-incrimination. *See United States v. Walker*, 652 F.2d 708, 713 (7th Cir.1981).

During trial, the government found itself on the horns of a dilemma. Under the *Bruton* rule, it was required to edit out of Sutton's statement any references to Smith; under the rule of completeness, it was required to admit those same portions as exculpatory of Sutton. It created this dilemma, however, by resisting severance, despite the fact that it had Sutton's statement in its possession, intended to use it at trial, and knew that this issue would arise. I would hold the government, not Sutton, responsible for its stratagem.

> The insistence on fairness to criminal defendants has led to a number of rules that may permit guilty persons to go free

rather than risk injustice to an innocent person. It seems strange that one presumably innocent may be made to undergo something less than a fair trial, or that he may be prejudiced in his defense if the prejudice is not "substantial," merely to serve the convenience of the prosecution and the efficiency of the judicial system.

> 1 C. Wright, *Federal Practice and Procedure* § 141 (1982).

Although Sutton did not move for severance either at the beginning of the trial or during trial when it became clear that the government intended to use an edited version of his statement, he nonetheless vigorously and, in my judgment, appropriately objected to the introduction of the edited statement. In light of that objection, I believe that the district court had two alternatives, neither of which would have required the entire trial to be aborted: it could have refused to admit the statement in any form and allowed the trial to proceed with respect to both defendants, or it could have admitted the statement in its entirety and allowed the trial to proceed with respect to Sutton alone. Its decision to admit the edited statement and continue with the joint trial constituted plain error pursuant to Fed.R.Evid. 103(d).

Accordingly, I would reverse Sutton's conviction and order his retrial.

---

1. Lee, an admitted "fence," had been fired from his job with Federal Express on the suspicion of theft a few weeks before the theft of the securities from the Federal Express van. He agreed to cooperate with the authorities after they informed him that his fingerprints appeared on twenty-two of the recovered certificates and offered him $1,800 and immunity from prosecution.

2. These portions read as follows:

   SUTTON stated he knows NORRIS SMITH and met him on Hamilton Street about two months ago at the residence of JAMES CARTER. They frequently drank beer and played chess at Carter's house.

   About five weeks ago while standing in front of CARTER's residence with SMITH, SMITH asked him if he knew where he (SMITH) could get rid of some ANHEUSER–BUSCH stock certificates. SUTTON stated he told him that he had never dealt with any

stocks before and that stocks were a "white boy's game."

   \* \* \* \* \* \*

   SUTTON advised that he was with SMITH on Hodiamont Street the day before SMITH was arrested. They purchased beer at C & H LIQUOR STORE, 1344 Hodiamont Street, and SMITH made two calls from a pay phone outside the liquor store. SMITH told SUTTON that he was trying to call a guy to get rid of the stocks. SUTTON advised he knew that he would get a cut of the money if he helped SMITH sell the stocks, but he did not know what to do with them.

   \* \* \* \* \* \*

   SUTTON denied any direct involvement in the theft of any ANHEUSER–BUSCH stock certificates or in any attempts to sell them to CENTERRE TRUST COMPANY.