**UNITED STATES of America, Plaintiff,**

v.

**Ray Anthony McCRAY, Carl Eugene Johnson, Keith Andre Stewart, Defendants.**

**No. LR–CR–88–31.**

United States District Court, E.D. Arkansas, W.D.

July 19, 1988.

John Bush, Asst. U.S. Atty., Little Rock, Ark., for the U.S.

Richard R. Medlock, Little Rock, Ark., for defendant Ray Anthony McCray.

A. Wayne Davis, Little Rock, Ark., for defendant Carl Eugene Johnson.

## MEMORANDUM OPINION AND ORDER

ROY, District Judge.

On June 14, 1988 the Magistrate issued his Proposed Findings and Recommendations regarding the defendants' Motion to Suppress. The Government has filed its objections to the recommendation, and the parties have briefed the issues involved. The Court has reviewed relevant portions of the transcript of the hearing held before the Magistrate, and is now ready to enter its findings.

The facts as stated by the Magistrate are as follows: On March 13, 1988, at approximately 1:19 p.m., Trooper Wilson Atkins of the Arkansas State Police stopped a 1987 Jeep vehicle which was eastbound on Interstate 40 in Monroe County, Arkansas, and which was occupied by the three defendants. Trooper Atkins testified that he clocked the vehicle at 73 miles per hour on his radar in a 65–mile per hour zone. Defendant Stewart, who was driving at the time, testified that he had the vehicle set on cruise control and was traveling 65 miles per hour.

Trooper Atkins stated that, as he approached the driver's window, he smelled both a "perfumey" odor and a "chemical" odor. The defendants were removed to his vehicle one at a time in the course of his discovery that Stewart's license had been suspended, that the license of McCray, the owner of the vehicle, had been revoked, and that defendant Johnson had a valid license.

Trooper Atkins asked each defendant about their destination and, although each stated that their destination was Memphis, each stated a different purpose for that visit. With all three defendants in his patrol car, Trooper Atkins sought McCray's consent to search the Jeep vehicle. Atkins testified that in response to a question by McCray as to what would happen if he did not sign the consent form, he read part of the form to him. The defendants testified that Trooper Atkins offered no answer to the question, which was asked twice.

The three defendants remained locked in the rear seat of the patrol car while Atkins conducted a search. He found a small white object in the center console, which he believed was a controlled substance and proceeded to search the entire vehicle. In his examination of luggage, he found four rectangular items wrapped in duct tape, which he suspected to be a controlled substance.

The defendants have been charged by indictment with conspiracy to possess with intent to distribute cocaine, and with possessing cocaine with intent to distribute.

In his proposed recommendations, the Magistrate found that the initial stop of the vehicle was not pretextual, but was a legitimate stop. He found that the trooper had probable cause, after discovering the material in the console, to search the luggage found in the vehicle. The Court will accept the Magistrate's finding on these issues. He also found, however, that there was not sufficient basis for a reasonable suspicion to request a consent to search. Citing *Garrett v. Goodwin*, 569 F.Supp. 106 (E.D. Ark.1982), the Magistrate concluded that since there was not reasonable suspicion that there was contraband in defendants' vehicle, consent to search could not be requested, and the motion to suppress should be granted.

■ The Court disagrees with the Magistrate's conclusions of law on this issue. As stated by the Government in their objections, in cases tried in federal court where evidence has been obtained by state officers, federal constitution search and seizure standards apply. When the issue becomes whether or not the evidence obtained by state officers was obtained by an unreasonable, thus unconstitutional search and seizure, the issue is to be judged as if the search and seizure had been made by federal officers, thus alleged violations of state standards are neither relevant nor controlling. *United States v. Montgomery*, 708 F.2d 343, 344 (8th Cir.1983). Thus, this Court must look to federal law to determine whether the actions of the state trooper were improper in requesting consent to search. This Court is bound by the

mandate of the Eighth Circuit Court of Appeals and United States Supreme Court on this issue. None of the parties have pointed to any Eighth Circuit case or United States Supreme Court case which has explicitly stated the principle that the Fourth Amendment requires that the police cannot request a consent to search without at least a reasonable or articulate suspicion to believe that there is contraband or criminal evidence where the police propose to look.

The Government and the defendants point to the case of *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) in support of their positions. The Government contends that this case stands for the proposition that there is no limitation on when an officer can merely ask for consent to search. Defendants contend that the language in *Schneckloth* requiring "some evidence of illicit activity" before consent can be requested, imposes the limitation suggested by the Magistrate. The Court finds that defendants' interpretation of the language is stretching the language too far. In fact, in *Hall, Search and Seizure,* § 4.5, relied upon by the Court in *Garrett, supra,* the author merely *suggests* that there be some standard:

> While there appears to be no limitation in *Schneckloth* on when the police can initiate a search to be conducted by consent, (footnote omitted), it is submitted that a constitutional minimum would require at least that the initial encounter with the police be governed by the stop and frisk standard that there at least be an articulable suspicion of wrongdoing and that a search will turn up evidence. (footnote omitted).

The Court finds it appropriate to cite the paragraph from *Schneckloth* so that the words relied upon by the defendants may be read in context:

> In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence. (footnote omitted). In the present case, for example, while the police had reason to stop the car for traffic violations, the State does not contend that there was probable cause to search the vehicle or that the search was incident to a valid arrest of any of the occupants. (footnote omitted). Yet, the search yielded tangible evidence that served as a basis for a prosecution, and provided some assurance that others, wholly innocent of the crime, were not mistakenly brought to trial. And in those cases where there is probable cause to arrest or search, but where the police lack a warrant, a consent search may still be valuable. If the search is conducted and proves fruitless, that in itself may convince the police that an arrest with its possible stigma and embarrassment is unnecessary, or that a far more extensive search pursuant to a warrant is not justified. In short, a search pursuant to consent may result in considerably less inconvenience for the subject of the search, and, properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity.

*Id.,* 412 U.S. at 227–228, 93 S.Ct. at 2048.

The Government has cited recent cases from Florida wherein consent to search was obtained after an initial illegal stop.[1]

Although these cases are enlightening, they are nevertheless distinguishable since in the present case, the Magistrate made a finding, to which this Court adheres, that the initial stop was legal. In the Florida cases, the courts never reached the question of whether a reasonable suspicion of criminal activity is required for an officer to request a consent to search, given a legitimate initial stop.

Had the Supreme Court intended to impose a specific limitation on law enforcement officers before they request consent to search, after making a legitimate stop, they would have done so, as they do in so

---

1. *United States v. Miller,* 821 F.2d 546 (11th Cir.1987); *Florida v. Coleman,* 505 So.2d 668, *cert. denied,* — U.S. —, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *United States v. Smith,* 799 F.2d 704 (11th Cir.1986).

many other cases. In the absence of specific guidance by the Eighth Circuit or Supreme Court on this issue, the Court will not impose such a burden.[2]

■ The Court finds that federal law does not require reasonable suspicion that there is contraband or criminal evidence before a consent to search can be requested, once an officer makes a legitimate stop. There is remaining, however, the question of whether the consent given in this case was voluntary. The Magistrate did not address this issue because of his findings.

Based upon the foregoing, the Court hereby reverses the Magistrate's conclusions of law and remands this matter to the Magistrate for further hearings.

---

**2.** Even if this Court were to hold otherwise, the Court cannot say that the facts and circumstances surrounding the stop did not constitute rea-sonable suspicion. Because of this Court's decision, this need not be addressed.