**UNITED STATES of America, Appellee,**

v.

**Enrique MARTINEZ, also known as Henry Martinez, Appellant.**

No. 95–1868.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1995.

Decided March 13, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied April 19, 1996.

**400**

Robert G. Hoy, West Fargo, ND., argued, for appellant.

Keith W. Reisenauer, Asst. U.S. Atty., Fargo, ND, argued, for appellee.

Before WOLLMAN, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

WOLLMAN, Circuit Judge.

Enrique Martinez, also known as Henry Martinez, appeals from the district court's[1] denial of his motion to suppress evidence seized during a search of his car. We affirm.

**I.**

Acting on the basis of information supplied to South Dakota law enforcement authorities by a confidential informant, members of the North Dakota Bureau of Criminal Investigations and the Cass County, North Dakota, Sheriff's Department made contact with Adam Romero concerning marijuana purchases. Romero cooperated with authorities to set up a controlled purchase of marijuana from his source, whom he knew as "Emanuel." Romero also informed authorities that the main drug dealer was "Henry," who was related to Emanuel. Emanuel telephoned Romero to meet him for the drug purchase at 3505 F Village Green Drive, Moorhead, Minnesota. Authorities verified that Henry and Rosemary Martinez resided at that address. The Moorhead Police Department had previously received information that Henry Martinez, living at the same address, was involved in drug trafficking.

On February 8, 1994, Romero purchased approximately five pounds of marijuana from Emanuel at Martinez's residence. Emanuel left the vicinity of the residence in a vehicle registered to Rosemary Martinez. Authorities stopped the vehicle and seized approximately ten pounds of marijuana in plain view within the vehicle. Emanuel was identified as Joe Manuel Garcia, Rosemary Martinez's brother. Members of the Clay County, Minnesota, Sheriff's Office obtained and executed a search warrant for the Martinez's residence and seized "money, receipts, scales, and other papers" related to drug trafficking. Authorities "were advised that two vehicles parked in the lot near 3505 F Village Green Drive, Moorhead belonged to Henry Martinez of that address," and they called Officer Griffin and his narcotic-sniffing dog, Radar, to the scene. Radar gave a "positive indication" that drugs were present in the two vehicles, which were identified as a Buick and a Chevrolet van.

A member of the Clay County Sheriff's Office then submitted an application and affidavit for search warrant to a judge of the Clay County District Court, who issued a warrant for a search of the vehicles. In addition to the same information previously included for the search warrant of the residence, the application stated: "A walk around of these two vehicles was conducted by K-9 officer Griffin and his partner RADAR. RADAR gave a positive indication on two vehicle [sic]."

No evidence of drug trafficking was found in the van. Among the items seized from the Buick were approximately 1.917 kilograms of marijuana, approximately 8.43 ounces of cocaine, and two firearms.

Martinez moved to suppress the drug evidence found in the Buick, arguing that the application for search warrant was insufficient because it did not indicate that Radar was trained to sniff drugs or that he had

---

1. The Honorable Rodney S. Webb, Chief Judge, United States District Court for the District of North Dakota.

indicated that drugs were present and because it did not detail Radar's track record. Martinez argued that even if all of the necessary information had been included, the warrant should still have not been issued because Radar's track record was unreliable, in that eleven of his previous twelve indications had been erroneous.

The district court denied the motion to suppress, finding that the authorities had probable cause to search the automobile even without Radar's positive alert. Martinez pled guilty to conspiracy to distribute drugs and money laundering, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. §§ 2 and 1956(a)(1). He conditionally pled guilty to carrying a firearm in relation to drug trafficking, in violation of 18 U.S.C. § 924(c)(1). He was sentenced to 102 months in prison and four years of supervised release.

## II.

■ Martinez argues that because the application for the search warrant did not support a finding of probable cause, the district court erred in denying his motion to suppress. We review the district court's factual findings for clear error and its conclusion as to whether the search violated the Fourth Amendment de novo. *See United States v. Hogan,* 25 F.3d 690, 692 (8th Cir. 1994).

■ The Buick may very well have been subject to being searched under the warrant issued for the residence. *See United States v. Reivich,* 793 F.2d 957, 963 (8th Cir.1986). Passing that question, we find that probable cause existed for the search notwithstanding any deficiencies regarding Radar's reliability as a drug dog. Once probable cause has been established, authorities may search a car without a warrant under the automobile exception, although the better practice is to obtain a warrant. *United States v. Friend,* 50 F.3d 548, 552 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 814, 133 L.Ed.2d 759 (1996); *United States v. Perry,* 925 F.2d 1077, 1080–81 (8th Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

■ Probable cause is determined by the totality of the circumstances, *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), and exists when the facts are sufficient for a reasonable person to believe that contraband or evidence of a crime will be found in the place to be searched, *United States v. Gladney,* 48 F.3d 309, 312 (8th Cir.1995). Here, two sources had identified Martinez as involved in drug trafficking, and authorities found evidence of drug trafficking during their search of Martinez's residence. Martinez owned the Buick, which was parked near his residence, and a vehicle registered to his wife had been used to transport drugs.

In a case with somewhat similar facts, we determined that the seizure of a vehicle was invalid for lack of probable cause because all of the evidence indicated that drugs would be found in the defendant's home or in a different vehicle, and none of the evidence indicated that drugs would be found in the particular vehicle that was seized. *United States v. Hogan,* 25 F.3d at 693. In *Hogan,* however, the seizure occurred at a point on a public highway some three to five miles from the defendant's home, *id.* at 692, whereas Martinez's car was parked near his residence.

Because probable cause existed for the search and the warrant was unnecessary, the search was valid. Accordingly, we conclude that the district court properly denied Martinez's motion to suppress.

The judgment is affirmed.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I respectfully disagree with the court's holding that there was probable cause to search Mr. Martinez's Buick without the drug dog's positive indication because, if we disregard the evidence provided by Radar, there is no evidence linking the car with drug trafficking. Radar's alert to one side, the warrant application indicated only that Martinez was suspected of dealing drugs and that

the police found drug paraphernalia in his apartment and marijuana in his wife's car. Under the established law of this circuit, none of this makes it probable that Mr. Martinez's car contained evidence of drug dealing.

In *United States v. Hogan*, 25 F.3d 690, 693–94 (8th Cir.1994), we held that an affidavit containing substantially identical information did not provide probable cause to search a car because it failed to establish a connection between that car and drug trafficking. (It indicated that the defendant was transporting drugs in his pickup, that the police found drug paraphernalia and a small amount of drugs in his house, and that he left the house in the car that was searched.) The court distinguishes *Hogan* on the ground that in that case the police seized the car "at a point on a public highway some three to five miles from the defendant's home, whereas Martinez's car was parked near his residence." This distinction is illusory because, in both cases, the police first encountered the relevant vehicle at the defendants' residences. The fact that the police permitted the defendant in *Hogan* to drive the car away and then radioed a backup unit to stop him seems to me to be of no legal consequence.

The court's opinion expands probable cause beyond the boundaries established by our prior decisions. Previous similar cases have always involved evidence directly connecting the searched car with drugs, *see, e.g., United States v. Wagner*, 884 F.2d 1090, 1094 (8th Cir.1989), *cert. denied* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990) (suspects were loading a footlocker suspected to contain drug paraphernalia into pickup); *United States v. Wentz*, 686 F.2d 653, 655 (8th Cir. 1982) (suspect repeatedly drove automobile to known drug house); *United States v. McGlynn*, 671 F.2d 1140, 1146 (8th Cir.1982) (suspect retrieved thick envelope from car immediately before participating in drug deal), and I think that the court goes one step too far by holding that no such connection is required. Today's decision essentially gives authorities license to search any car

that is owned by a person suspected of dealing drugs.

I also disagree with the court's suggestion that Martinez's car might have been subject to search under the authority of the warrant issued for his residence. Although a "vehicle found on a premises ... is considered to be included within the scope of a warrant authorizing a search of that premises," *United States v. Reivich*, 793 F.2d 957, 963 (8th Cir.1986), I do not think that Martinez's Buick, which was parked in the apartment building parking lot, was "on the premises" of Martinez's apartment. In my opinion, the principle relied on in *Reivich* can reasonably extend only to the garage of a residence, or, perhaps, in a proper case, to its driveway.

The government argues that even if the warrant was improperly issued, the evidence is nevertheless admissible under the principles announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Court in that case held that suppression of the evidence is not called for if the officers executing an invalid search warrant reasonably believed that it was in fact valid. But the case for the objective reasonableness of the officers' actions in the present circumstances cannot be made. That is because the application for the warrant should have indicated that Radar was not a particularly good drug dog and the police knew it: In fact, on the day in question, he was one for twelve. Before alerting on the Buick, Radar had already alerted twelve times, and, although he did detect a small amount of marijuana in a suitcase, he also alerted on (among other things) money, a shotgun, an empty cabinet, a kitchen chair, some papers marked "tax info", a sofa, a pillow, and a television. No drugs were found in any of these places.

We have held, it is true, that "there is no legal requirement that the affidavit [supporting a warrant application] specify the number of times the dog previously has sniffed out drugs." *United States v. Maejia*, 928 F.2d 810, 815 (8th Cir.1991). In all our previous cases, however, the application did include at least some indication of the dog's skill. *See United States v. Delaney*, 52 F.3d 182, 188 (8th Cir.1995) ("The dog ... had alerted

more than fifty times in situations where drugs were found."); *Maejia*, 928 F.2d at 815 ("The dog had been used in past with successful results."); *United States v. Moore*, 911 F.2d 140, 145 (8th Cir.1990) (noting "positive alert for narcotics given by the certified canine drug detection unit.").

But whatever may be the law with respect to whether a warrant application must always describe a dog's training or reliability (this is the rule in the Ninth Circuit, *see United States v. Lingenfelter*, 997 F.2d 632, 639 (9th Cir.1993)), authorities emphatically do have a duty to inform the magistrate if a drug dog is unreliable. *See, e.g., United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir.1993) (suggesting a poor record might lead magistrate to find no probable cause). In this case, the police knew that Radar had an extraordinarily bad track record, yet they neglected to mention that very pertinent fact in the warrant application.

In *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993), we invalidated a search warrant because the police failed to tell the magistrate relevant information about a drug sniff. The police said that a drug dog "exhibited an interest" in a package, but they did not tell the magistrate that the dog failed to alert on the package. *Id.* at 1233. We held that the police violated *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), because the omission was made with at least a reckless disregard for whether it made the warrant application misleading, and we further held that the evidence had to be suppressed because the application did not establish probable cause when it was supplemented with the omitted material. *Id.* at 1234–35.

I believe that the same flaw infects the warrant issued in this case. When the police decided not to include information about Radar's unreliability, they exhibited, as a matter of law, a reckless disregard for whether the omission made the application misleading; and suppression is required because when the omission is supplied the application does not support a finding of probable cause. The knowledge that the police had of Radar's unreliability, moreover, made it objectively unreasonable for them to believe that the warrant was valid, and thus the government cannot avail themselves of the principle established in *Leon. See Leon*, 468 U.S. at 923, 104 S.Ct. at 3420–21; *see also Jacobs*, 986 F.2d at 1235. While an argument might be made that *Leon* protects evidence if a reasonable officer could have believed that the warrant application, excluding the information about Radar's activities, supported a finding of probable cause, the government does not in fact make this argument, and I would in any case be hesitant to parse the officers' motives quite so finely in circumstances that support a finding of willful deception on their part. "Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271 (2d Cir.1996) (Calabresi, J.).

I would therefore reverse the district court's denial of Mr. Martinez's motion to suppress.