# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

No. 96-3615

———————

United States of America,     *
        *
        Plaintiff - Appellee,    *   Appeal from the United States
        *   District Court for the
    v.         *   District of South Dakota.
        *
Joseph F. Hornbeck,        *
        *
        Defendant - Appellant.    *
        *

———————

Submitted: March 11, 1997

Filed: July 7, 1997

———————

Before MAGILL, JOHN R. GIBSON, and MURPHY, Circuit Judges.

———————

JOHN R. GIBSON, Circuit Judge.

Joseph Hornbeck was charged with possessing marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1994). Hornbeck pled guilty and was sentenced to time served and three years of supervised release. Hornbeck's guilty plea reserved the issues that are the basis of this appeal. These issues are whether the district court[1] erred in admitting both the evidence obtained pursuant to a tribal search

———————

[1]The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota.

warrant and Hornbeck's statement to an FBI agent.  We affirm the district court's judgment.

On September 30, 1995, Stanley Star Comes Out, a criminal investigator for the Oglala Sioux Tribal Public Safety Commission, executed a tribal search warrant for Hornbeck's residence and seized property found there.  Tribal law required that the return be filed with the tribal court within the time limit shown on the warrant, a date which must be within ten days after the warrant was issued.  Oglala Sioux Crim. Code, Chapter 8, § 3-2.  A warrant is void under tribal law if not timely returned.  Id.  Stanley Star Comes Out testified that he returned the warrant to the tribal prosecutor, but no return was filed with the tribal court.  He also stated that he had prepared an inventory and given a copy to Hornbeck's spouse.  Hornbeck testified that he did not receive a copy of the inventory.

On March 11, 1996, Hornbeck was arrested on a federal arrest warrant and held at the Kyle, South Dakota jail.  The next day, FBI special agent Mark Vukelich was at the jail on another matter and learned that Hornbeck was in custody there.  He served Hornbeck with the federal arrest warrant pertaining to this case and advised him of his rights.  Hornbeck read and signed an Interrogation/Advice of Rights form and indicated his willingness to be interviewed.  Hornbeck made certain statements to Vukelich before requesting that Vukelich cease questioning him.  Vukelich asked no further questions after Hornbeck invoked his right to silence.  On March 13, 1996, Hornbeck made his initial appearance before a magistrate in Rapid City, South Dakota.

Hornbeck filed motions to suppress both the evidence obtained from the search of his home and his statement to Vukelich.  An evidentiary hearing was held before a

magistrate judge,[2] who made findings of fact and recommended denial of the motions to suppress. The district court accepted the magistrate's findings and recommendations and denied Hornbeck's motions to suppress.[3] Hornbeck now appeals.

**I.**

We may reverse the district court's factual findings as to the alleged illegal search only if they are clearly erroneous. United States v. Martinez, 78 F.3d 399, 401 (8th Cir. 1996). We review de novo the court's conclusion about the constitutionality of the search. Id.

Hornbeck argues that the district court should have suppressed the search evidence because the warrant was void under tribal law due to the failure to timely file the return and provide him with an inventory of property seized. Hornbeck's reliance on tribal law, however, is erroneous. Federal, not tribal or state, law governs the admissibility of this evidence.[4] "The question whether evidence obtained by state

---

[2]The Honorable Marshall P. Young, United States Magistrate Judge for the District of South Dakota.

[3]The district court issued two orders addressing and denying Hornbeck's motions. The court issued the second order because Hornbeck requested a specific ruling on whether the delay between his initial detention and appearance before the magistrate was unreasonable.

[4]Hornbeck contends that Federal Rule of Criminal Procedure 41, governing federal search warrants, is inapplicable here, while the prosecution relies on several cases under Rule 41. Rule 41 does not apply here because federal authorities were not involved in applying for or executing the warrant. See United States v. Bieri, 21 F.3d 811, 816 (8th Cir.), cert. denied, 513 U.S. 878 (1994). Cf. United States v. Moore, 956 F.2d 843, 847 n.3 (8th Cir. 1992) ("A search conducted with significant involvement of federal officers must comply with federal law."). Even assuming that Rule 41 applied, however, we would nevertheless conclude that the evidence was properly admitted. "We apply the exclusionary rule to violations of Rule 41 only if a defendant is prejudiced or reckless disregard of proper procedure is evident." Bieri, 21 F.3d at 816; see also United States v. Freeman, 897 F.2d 346, 349 (8th Cir. 1990); United States v. Burgard, 551 F.2d 190, 193 (8th Cir. 1977). The district court admitted the search evidence under this standard and emphasized that the search would have taken place regardless of the alleged tribal law violations because the violations primarily took place after the search.

officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers." Preston v. United States, 376 U.S. 364, 366 (1964).[5]  As we have explained:

> In a federal prosecution, we evaluate a challenge to a search conducted by state authorities under federal Fourth Amendment standards. . . .  A court must examine the legality of a search by state officers as if made by federal officers. We recently concluded in United States v. Moore, 956 F.2d 843, 847 (8th Cir. 1992), that "evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosection because state law was violated."

Bieri, 21 F.3d at 816 (citations omitted); accord United States v. Johnson, 12 F.3d 827, 835 (8th Cir.), cert. denied, 511 U.S. 1095 (1994); United States v. Tate, 821 F.2d 1328, 1330 (8th Cir. 1987), cert. denied, 484 U.S. 1011 (1988); United States v. Eng, 753 F.2d 683, 686 (8th Cir. 1985).[6]

---

[5]The search of Hornbeck's residence involved tribal, and not state, authorities, but cases involving searches by state authorities are relevant because the search of Hornbeck's residence and searches by state authorities are non-federal.

[6]In Eng, we suggested that in some circumstances principles of comity may weigh in favor of a federal court suppressing evidence seized in violation of state law. 753 F.2d at 686.  There is no such principle at stake here; this ruling does not impact the tribal court or tribal law.

Hornbeck's argument is based solely upon alleged violations of tribal law.  He does not argue that the search and seizure violated the Constitution or other federal law.  Hornbeck's briefs mention the Fourth Amendment and the Constitution in passing, but do not explain how they were implicated by the alleged violations of tribal law.  This is insufficient as a matter of law.  The exclusionary rule is a "blunt instrument" and "[f]or that reason courts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude."  United States v. Burke, 517 F.2d 377, 386 (2d Cir. 1975); see also Freeman, 897 F.2d at 348.  Because Hornbeck has alleged no constitutional violation here, the district court properly denied his motion to suppress the evidence from the search of his home.

## II.

Hornbeck next contends that his statement to FBI agent Vukelich was inadmissible because approximately fifteen hours elapsed between his arrest and his statement, and approximately forty hours elapsed between his arrest and his appearance before the magistrate.  "We review the question of whether a confession is voluntary as a question of law subject to de novo consideration.  However, we review determination of the facts underlying this legal conclusion under the clearly erroneous standard."  United States v. Casal, 915 F.2d 1225, 1228 (8th Cir. 1990) (citation omitted), cert. denied, 499 U.S. 941 (1991).

The admissibility of Hornbeck's incriminating statement is governed by 18 U.S.C. § 3501 (1994).  It provides, in part, that a confession "shall be admissible in evidence if it is voluntarily given."  18 U.S.C. § 3501(a).  A confession is not inadmissible solely because of delay in bringing the defendant before a magistrate if the confession was voluntary and made within six hours after the defendant's arrest or detention.  Id. § 3501(c).  A confession made more than six hours after arrest or detention may nevertheless be admissible if the confession was voluntary and the delay was reasonable, taking into consideration the means of transportation and the travel

distance to the nearest magistrate. Id. See, e.g., United States v. Bear Killer, 534 F.2d 1253, 1256, 1257 n.3 (8th Cir.) (holding that statements given nine and one-half and twelve hours after arrest were voluntary; the nearest magistrate was 100 miles away), cert. denied, 429 U.S. 846 (1976).

The district court found that Hornbeck was in custody approximately 15.7 hours before he made his statement. Therefore, under 18 U.S.C. § 3501, Hornbeck's statement was properly admitted only if the following two requirements were met: First, the delay in bringing Hornbeck before a magistrate was reasonable. Second, Hornbeck's statement was voluntary.

As to the reasonableness of the delay, the district court found that Rapid City, the location of the nearest magistrate, was a one and one-half hour drive away from Kyle. In addition, Hornbeck stayed overnight in the Kyle jail because he was arrested at 7:43 p.m. The court found no evidence in the record suggesting that the delay was a law enforcement tactic to obtain a confession. Considering the circumstances, the court held that the time lapse between Hornbeck's arrest and arraignment was reasonable.

The district court evaluated the evidence in light of the factors set forth in 18 U.S.C. § 3501(b) to determine whether Hornbeck's statement was voluntary.[7] Agent

---

[7]18 U.S.C. § 3501(b) provides:

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel, and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

Vukelich testified that he served Hornbeck with the federal arrest warrant, advised him of his rights, and informed him that he was not required to talk with the authorities. Hornbeck also read and signed an Interrogation/Advice of Rights form and indicated his willingness to be interviewed. Although Hornbeck was represented by a tribal attorney on two other cases in tribal court, there was no evidence that Hornbeck informed Vukelich of this or that Vukelich was otherwise aware of it. Hornbeck did not indicate to Vukelich that he desired to speak with an attorney. When Hornbeck invoked his right to remain silent, Vukelich asked no further questions and had no further discussion with Hornbeck.

The district court also considered other circumstances of the interview in making its voluntariness determination. The interview room was approximately ten feet by ten feet and had a desk, chairs, and a telephone. Vukelich's firearm was not visible during the interview. Vukelich was able to calm Hornbeck's initial nervousness by asking him simple background questions, and Vukelich did not threaten Hornbeck. The court concluded that Hornbeck's statement was voluntary and admissible and therefore denied his motion to suppress.

After reviewing the record as a whole, we hold that the district court's findings regarding the circumstances of Hornbeck's statement are not clearly erroneous. Those findings support the conclusion that Hornbeck made his statement voluntarily, and that the delay in bringing him before a magistrate was reasonable. Therefore, Hornbeck's statement was properly admitted into evidence under 18 U.S.C. § 3501.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.