# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1751

_____

United States of America

*Plaintiff - Appellee*

v.

Raymond Antonio Lewis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Delta

_____

Submitted: April 18, 2025
Filed: July 24, 2025
[Published]

_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.

_____

PER CURIAM.

A jury convicted Raymond Antonio Lewis of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The

district court[1] sentenced Lewis to 156 months' imprisonment. On appeal, he argues that (1) the district court erred in denying his pretrial motions to suppress testimony and sever the trial, (2) the preindictment delay violated his right to due process under the Fifth Amendment, (3) the delay between indictment and trial violated his right to a speedy trial under the Sixth Amendment, and (4) the evidence was insufficient to support his conviction. We affirm.

I. *Background*

A. *Factual History*

On December 20, 2018, Officer John Buford responded to a report that shots had been fired in the area of 32nd Street and Church Street in West Memphis, Arkansas. As Officer Buford was driving down Church Street, he spotted a man and woman walking together. Officer Buford testified that he believed that the man was "carrying what appeared to be a rifle." R. Doc. 134, at 21–22.

West Memphis Police Department policy requires officers to activate their dash cam footage and body microphones when making arrests. The recording system on the patrol car will automatically illuminate when an officer turns on the blue emergency lights. Officer Buford did not turn on his lights but continued to approach the individuals. Officer Buford testified that they "had just had at least three shooting incidents within a 30-minute period, where one . . . resulted in a homicide." *Id.* at 109. Officer Buford admitted that he "didn't follow the policy." *Id.* at 113. Officer Buford testified that he did not activate the blue lights to maintain a "tactical advantage" and the "element of surprise" and to avoid the suspects fleeing. *Id.* at 108.

As Officer Buford's patrol vehicle approached the individuals, the man quickly veered toward a ditch that ran perpendicular to Church Street. The woman continued to walk down the street. After observing this, Officer Buford ordered the

---

[1]The Honorable D. P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

man to stop, drew his weapon, and requested backup. Officer Buford testified that he saw "the rifle . . . laying on the ground next to a silver handgun." *Id.* at 24. Officer Buford exited his vehicle, ordered the man to the ground, and handcuffed him.

Officer Buford then secured the firearms and waited for the other officers to arrive. Officer Buford identified the man as Raymond Lewis based on his driver's license. After radioing in Lewis's identification, Officer Buford discovered Lewis had a previous felony conviction and was an "active supervision parolee with a search waiver on file." *Id.* at 30. At that point, Officer Buford arrested Lewis for being a felon in possession of a firearm. Officer Buford searched Lewis's person. He discovered a prescription pill bottle containing suspected ecstasy pills, which were later determined to be methamphetamine. Lewis also had a bag "contain[ing] various loose ammunition." *Id.* at 32.

## B. *Procedural History*

In May 2021, a grand jury indicted Lewis with one count of being a felon in possession of a firearm. In November 2022, the government filed a superseding indictment that broadened Count I to include possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Additionally, the new indictment added Count II for possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and Count III for possessing a firearm in furtherance of a drug offense, in violation of 18 U.S.C. § 924(c)(1)(A).

Lewis's initial appearance and arraignment was held on August 4, 2021. After receiving Lewis's not guilty plea, the court set Lewis's jury trial for September 27, 2021. Over the next year, Lewis's counsel moved for three continuances. For ten months of this time, Lewis was free on bond until the court granted the government's motion to revoke bond on September 29, 2022. On the same day, Lewis's counsel moved to withdraw as counsel. The district court granted this request, appointed a new attorney, and rescheduled the trial for May 30, 2023. On May 3, 2023, Lewis's new counsel submitted a motion to suppress and a motion to sever the trial. To have

time to address the motions, on May 4, the district court entered an order continuing the trial until June 20, 2023. The order stated that "[t]he [c]ourt must try an older criminal case starting on 22 May 2023; and the parties' recent filings in this case raise issues that need careful consideration and resolution before trial." R. Doc. 81, at 1.

The district court held a hearing for the pending motions. Lewis moved to suppress Officer Buford's testimony, arguing that his failure to activate his dash camera and his body microphone violated the police department's policy and warranted suppression of Officer Buford's testimony. The government conceded the policy violation but argued that it did not warrant suppression of Officer Buford's testimony. The district court agreed, finding that "the violation of the policy is not a sufficient basis to suppress the testimony from the officers." R. Doc. 138, at 18.

Next, Lewis brought a motion to bifurcate presentation of the proof for the possession of the firearm from the proof that he had a felony conviction. Lewis sought this relief to avoid prejudice caused by the admission of his previous convictions. The government responded with authoritative precedent and characterized the issue as "open and shut." *Id.* at 21. The district court denied the motion to sever, agreeing that the government was "right on the law." *Id.* at 28. The district court encouraged Lewis to come up with "a stipulation on the prior convictions." *Id.* Ultimately, Lewis stipulated to his felon status. His prior convictions were not presented to the jury to prove his felon status.[2]

The district court entered an order denying the evidentiary motions to suppress and sever on May 25, 2023, and scheduled the jury trial for June 26, 2023. On the first day of trial, Lewis "raise[d] the issue of speedy trial" for the first time. R. Doc. 133, at 12. Lewis argued that there was an unfair prosecutorial delay because he was arrested on December 20, 2018, but was not indicted until May 4, 2021. From there,

_____

[2]As part of its proof for Count II (possession of methamphetamine with intent to distribute), the government did introduce several of Lewis's past drug convictions under Federal Rule of Evidence 404(b).

Lewis explained that he "ha[d] been in custody for a year." *Id.* at 13. Lewis argued that "for the last seven months," defense counsel had been working on the case and had not sought any continuance. *Id.* Lewis noted that the court had delayed, in part, due to "an older case" that it wanted to try first. *Id.* Lewis asserted this violated "his Sixth Amendment right to a speedy trial." *Id.* In response, the district court pointed out "the earlier continuances . . . [that] were unopposed." *Id.* at 15. Moreover, "defense [counsel] sought several of them, if not all of them, and Mr. Lewis was out . . . for much of that time on pretrial [release]." *Id.* Consequently, the district court denied the motion.

At trial, Officer Buford testified about the events of December 20, 2018. The officers who arrived on the scene a few minutes later also testified, corroborating Officer Buford's account. Moreover, the emergency dispatch log confirmed Officer Buford's recall of the sequence of events as the stop progressed. The government then introduced testimony that the amount of methamphetamine found on Lewis was consistent with drug distribution. It also offered his prior convictions of drug distribution under Rule 404(b). Finally, the government provided testimony from Lewis's parole officer, who testified that Lewis signed a waiver of his parole revocation hearing. The waiver admitted to "violat[ing] the . . . conditions of release" by unlawfully possessing "the weapons and controlled substances" at the time of his arrest by Officer Buford. R. Doc. 135, at 88.

The defense offered testimony from four witnesses: Antonerica Lewis (Lewis's daughter); Tiffany Lewis (Lewis's niece); Ricky Lewis (Lewis's cousin); and Shuntrail King (the father of Tiffany's children). They all testified that they did not see Lewis with any guns or drugs that evening and that they only remembered seeing Lewis holding "his Bible." *See id.* at 188; *see also id.* at 207, 227, 236. Following the cross-examination of these witnesses, both parties rested. It fell to the jury to determine whether Lewis carried weapons, ammunition, and controlled substances or only a Bible on December 20, 2018.

The jury returned guilty verdicts for Count I (possession of the firearms and ammunition) and Count II (possession of methamphetamine with intent to distribute). However, the jury acquitted Lewis of Count III (possessing firearms in furtherance of drug distribution). At sentencing, the district court imposed a below-Guidelines sentence of 156 months' imprisonment, which Lewis does not challenge on appeal.

## II. *Discussion*

On appeal, Lewis argues that (1) the district court erred in denying his pretrial motions, (2) the government violated his due process rights under the Fifth Amendment by delaying his indictment, (3) the district court violated his speedy trial rights under the Sixth Amendment by delaying the trial, and (4) the evidence was insufficient to support his convictions. We affirm.

### A. *Motion to Suppress*

Lewis argues on appeal that the district court erred in denying his motion to suppress Officer Buford's testimony. He asserts that Officer Buford's admitted department policy violation of not activating his dash camera and body microphone required exclusion of his testimony. In support, Lewis relies on generic principles of "best evidence," *see United States v. Gibson*, 366 F. Supp. 3d 14, 19 (D.D.C. 2018), and the government's duty to produce exculpatory evidence, *see California v. Trombetta*, 467 U.S. 479, 485 (1984). He does not, however, allege a constitutional violation. He instead contends that a department-policy violation is sufficient to exclude the officer's testimony. We disagree. "The exclusionary rule is a blunt instrument and for that reason courts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude." *United States v. Hornbeck*, 118 F.3d 615, 618 (8th Cir. 1997) (cleaned up) (holding that district court properly denied a motion to suppress that was based solely on alleged violations of tribal law with no alleged constitutional violation). The officer's decision not to activate his car's lights and video recording system did not require exclusion of his subsequent personal observations made at the scene.

B. *Motion to Sever*

Lewis argues that the district court erred in denying his motion to sever the trial.[3] Lewis requested that the court "bifurcate[e] the trial to allow the jury to consider . . . the issue of possession of the firearm, and then if Lewis is found guilty[], . . . allow the government to present its evidence of the prior convictions." R. Doc. 79, at 2. We review denial of a severance motion for abuse of discretion. *United States v. Reichel*, 911 F.3d 910, 915 (8th Cir. 2018). The defendant must show that the reversal resulted in "severe prejudice, that is, if the defendant would have had 'an appreciable chance for an acquittal' in a severed trial." *Id.* (quoting *United States v. Geddes*, 844 F.3d 983, 988 (8th Cir. 2017)).

A defendant is not automatically entitled to bifurcation of a felon-in-possession charge. *See United States v. Koskela*, 86 F.3d 122, 125–26 (8th Cir. 1996). In fact, "every appellate court that has addressed whether a single count indictment under § 922(g)(1) should be entitled to a bifurcated trial has rejected the idea." *United States v. Higdon*, 638 F.3d 233, 244 n.8 (3d Cir. 2011) (collecting cases), *abrogated on other grounds by*, *United States v. Adams*, 36 F.4th 137 (3d Cir. 2022). The district court did not abuse its discretion in denying Lewis's motion to bifurcate proof for Count I. Lewis "stipulate[d] that he is and knew he was a convicted felon." R. Doc. 134, at 7. As a result, Lewis's previous convictions were not presented to the jury to prove his felon status, and he suffered no prejudice from having the counts tried together.

------

[3]In his briefing, Lewis contends that the district court also erred in failing to sever the felon-in-possession charge with his other counts. However, in his motion in the district court, "Lewis request[ed] the court to sever or bifurcate on the issue of possession of a firearm." R. Doc. 79, at 4. During the hearing, Lewis reiterated his request to "have just a trial . . . on the issue of the possession." R. Doc. 138, at 20. Lewis never requested separate trials for his felon-in-possession charge and his remaining charges. Therefore, "failure to raise the issue before the district court constitutes a waiver." *Ingrassia v. Schafer*, 719 Fed. App'x 536, 538 (8th Cir. 2018) (unpublished per curiam) (citing *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1201–02 (8th Cir. 1990)).

C. *Speedy Trial*

Lewis alleges that (1) the government's preindictment delay violated his Fifth Amendment right to due process and that (2) the district court's postponement of his trial for docket management purposes violated his Sixth Amendment right to a speedy trial.[4]

1. *Preindictment Delay*

Lewis alleges that the time between his arrest and his indictment was a delay that ran afoul of the Fifth Amendment due process clause. We review a district court's findings as to preindictment delay and any resulting prejudice for clear error. *See United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000).

"The Due Process Clause of the Fifth Amendment protects a criminal defendant against unreasonable pre-indictment delay." *Id.* at 451–52. To prove such a violation, Lewis "must establish that: (1) the delay resulted in actual and substantial prejudice to the presentation of the defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him." *Id*. at 452. Actual prejudice requires that "a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government." *Id.* (quoting *United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir. 1986)). "It is not sufficient for a defendant to make speculative or conclusory claims of possible prejudice as a result of the passage of time." *Id.*

---

[4]Additionally, Lewis attempts to allege a violation of the Speedy Trial Act in his briefing. However, below, Lewis never alleged a violation of the Speedy Trial Act and only contended that Lewis's "Sixth Amendment right to speedy trial ha[d] been violated." R. Doc. 133, at 13. Failure to raise the Speedy Trial Act before the district court is fatal to Lewis's claim. *See* 18 U.S.C. § 3162(a)(2); *see also United States v. Saavedra*, 684 F.2d 1293, 1297 (9th Cir. 1982) (holding that defendant's failure to make any claim based on the Act at trial was fatal to her claim because her motion to dismiss below was based solely on the Sixth Amendment).

First, Lewis is unable to show that the preindictment delay actually and substantially prejudiced him. Lewis alleges that the delay affected Officer Buford's testimony. He references multiple instances when the officer could not remember specific details from December 20, 2018. However, Lewis makes no attempt to show how the forgotten details that he mentions were material or how their absence substantially prejudiced him. Officer Buford was unable to recall "the exact streets that [he] patrolled" on the night of the arrest, *see* R. Doc. 134, at 62, whether it was Officer Buford or another officer who "asked [Lewis] for his I.D.," *see id.* at 80, what happened to the "plastic trash bag" that was holding ammunition, *see id.* at 83, and other details. Without showing the materiality of these details, any doubt as to them went only to the officer's credibility. The officer's credibility was the jury's call. In addition, Lewis does not establish that the government intentionally delayed the indictment to gain a tactical advantage over him or to harass him. Accordingly, the district court did not err in denying his motion to dismiss the indictment based on the preindictment delay.

### 2. *Sixth Amendment Speedy Trial Violation*

Next, Lewis raised a speedy trial violation under the Sixth Amendment. "We review the district court's findings of fact on whether a defendant's right to a speedy trial was violated for clear error but review its legal conclusions de novo." *United States v. Cooley*, 63 F.4th 1173, 1177 (8th Cir. 2023) (internal quotation marks omitted).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. "The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Johnson*, 990 F.3d 661, 670 (8th Cir. 2021) (cleaned up). Generally, an "[a]ssessment of whether a defendant's Sixth Amendment right to a speedy trial has been violated includes consideration of the length of the delay, the reason for the

delay, the defendant's assertion of his right, and prejudice to the defendant." *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002).

"However, 'to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay.'" *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). In Lewis's case, it does. Generally, a delay over a year has been found to be presumptively prejudicial. *See Doggett*, 505 U.S. at 652 n.1 (noting that lower courts have usually found delay approaching one year to be presumptively prejudicial); *United States v. Walker*, 92 F.3d 714, 717 (8th Cir. 1996) (finding that a delay of 37 months was "sufficient to trigger the speedy trial analysis"); *United States v. Maloney*, 102 F.4th 904, 917 (8th Cir. 2024) (finding that a delay of 17 months was sufficient to trigger the speedy trial analysis). Here, the time between formal charges and trial was just over two years and therefore is sufficient to trigger the speedy trial analysis.

Next, we consider the reason for the delay. Lewis does not dispute that his own motions accounted for the majority of the delay. Lewis filed three separate continuance motions and requested that his counsel be replaced as trial approached. The only other delay occurred when the district court postponed the trial date to allow it to address Lewis's pretrial motions and to conduct a scheduled trial in an older criminal case. After deciding Lewis's motions, the district court's delay associated with the older criminal case accounted for only 32 days. The remainder of the two-year delay was attributable to Lewis himself. *See United States v. Flores-Lagonas*, 993 F.3d 550, 563 (8th Cir. 2021) ("There typically will be no Sixth Amendment violation when the defendant was responsible for most of the delay . . . ." (internal quotation marks omitted)).

The third factor requires us to consider whether Lewis asserted his right to a speedy trial. *See Sprouts*, 282 F.3d at 1042. Here, Lewis did raise a speedy trial violation objection before the trial began, but "he waited until the first day of trial to do so" and otherwise "made no attempt to have his case brought to trial sooner."

*United States v. Shepard*, 462 F.3d 847, 864 (8th Cir. 2006). Lewis requested three of the continuances and did not oppose the district court's order to postpone the trial for the fourth time until the first day of trial. *See Johnson*, 990 F.3d at 671 (holding that defendant "only weakly asserted her speedy trial right" because "although she eventually moved to dismiss, she failed to oppose the four continuances").

Finally, we consider the prejudice to the defendant. *See Sprouts*, 282 F.3d at 1042. The Supreme Court has recognized that this prejudice can include "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (cleaned up). "[T]he inability of a defendant [to] adequately . . . prepare his case" is the most serious form of prejudice. *Id.* (internal quotation marks omitted). Lewis was only in custody for ten months of the two-year delay period, and Lewis does not allege any emotional or physical harm caused by the delay. Instead, Lewis claims that the passage of time affected his ability to make his defense. However, he does not support this assertion with specific facts indicating any time-related detriment to his case. "In cases without government negligence, . . . we have required the defendant to show actual or specific prejudice." *Flores-Lagonas*, 993 F.3d at 565. As discussed previously, Lewis's reliance on Officer Buford's occasional lapse in memory on inconsequential details was not sufficient to show actual prejudice. He fails to explain how the omission of those details hindered his defense or would have led to exculpatory evidence. Based on the consideration of the factors, the district court did not err in determining that the delay did not violate the Sixth Amendment.

## D. *Sufficiency of the Evidence*

Lewis alleges that the evidence presented to the jury was insufficient to support his verdict. We disagree.

"We review the sufficiency of the evidence de novo . . . . view[ing] the evidence in the light most favorable to the verdict and revers[ing] only if 'no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'"

*United States v. Hoeft*, 128 F.4th 917, 921 (8th Cir. 2025) (emphasis omitted) (quoting *United States v. Blair*, 93 F.4th 1080, 1085 (8th Cir. 2024)).

At trial, Officer Buford testified as to the events on December 20, 2018. Officer Buford said that he saw Lewis with a "rifle," *see* R. Doc. 134, at 22, and upon searching him found ammunition and controlled substances. The government presented the dispatch log record to confirm this account. The government also introduced into evidence Lewis's admission in his waiver of a parole revocation hearing. Lewis admitted that he violated his parole conditions by possessing weapons and controlled substances. Lewis presented counter testimony by several witnesses that Lewis was only seen carrying "his Bible." R. Doc. 135, at 188. Lewis cross-examined Officer Buford as to his narrative of events, challenging his recollection and credibility. The jury was left to decide the credibility of all these witnesses. We have said that these types of "credibility determinations are virtually unreviewable on appeal." *United States v. May*, 70 F.4th 1064, 1076 (8th Cir. 2023) (quoting *United States v. Wiest*, 596 F.3d 906, 911 (8th Cir. 2010)). "[C]onflicting evidence . . . affords no basis for reversal without more." *United States v. Cathey*, 997 F.3d 827, 834 (8th Cir. 2021) (internal quotation marks omitted). Here, the jury heard conflicting testimony as to what Lewis was holding when Officer Buford approached him. The jury was empowered to weigh this testimony. If believed, the evidence presented sufficiently supported the guilty verdicts.

### III. *Conclusion*
For the foregoing reasons, we affirm the district court.

_____